**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JANIS WOLF, Individually and on behalf of those similarly situated, | No. 22-15233 |
| Plaintiff-Appellant, | D.C. No. 2:20-cv-00957-DLR |
| v. | MEMORANDUM* |
| CARPENTER, HAZLEWOOD, DELGADO & BOLEN, LLP, | |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted February 7, 2023
Phoenix, Arizona

Before: HAWKINS, GRABER, and CHRISTEN, Circuit Judges.
Concurrence by Judge CHRISTEN.

This case arises out of a dispute over Defendant Carpenter, Hazlewood,

Delgado & Bolen, LLP's procurement of Plaintiff Janis Wolf's credit report.

Plaintiff stopped paying assessments that she owed to her homeowners'

association. The association hired Defendant law firm to collect the unpaid

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

assessments. Before filing suit, Defendant obtained Plaintiff's credit report, without her consent, to learn her current address. Plaintiff filed the present action alleging that Defendant had violated the Fair Credit Reporting Act ("FCRA"). The district court granted summary judgment in favor of Defendant. Plaintiff timely appeals. Reviewing de novo, Zobmondo Ent., LLC v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010), we affirm.

"Any person who willfully fails to comply" with FCRA is liable to the affected consumer. 15 U.S.C. § 1681n(a) (emphasis added). In this context, "willfulness" describes an action taken in "reckless disregard of statutory duty" or "known to violate [FCRA]." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 56–57 (2007). A party does not act in reckless disregard of FCRA "unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 69. Here, assuming without deciding that Defendant violated FCRA, its conduct was not willful as so defined. Its reading of the statute is consistent with our decision in Brothers v. First Leasing, 724 F.2d 789 (9th Cir. 1984). Plaintiff had a grace period during which she could receive half a month's services that she had not yet paid for. Because that grace period could be considered an extension of credit under our

2

reasoning in <u>Brothers</u>, Defendant's reading of the statute was not objectively unreasonable.[1]

**AFFIRMED.**

---

[1] Under FCRA, "credit" means "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or <u>to purchase</u> property or <u>services and defer payment therefor</u>." 15 U.S.C. §§ 1681a(r)(5), 1691a(d) (emphases added). "[C]reditor" is defined here as "any person who regularly extends, renews, or continues credit." 15 U.S.C. §§ 1681a(r)(5), 1691a(e). The association regularly extends credit in that form.

*Wolf v. Carpenter, Hazlewood, Delgado & Bolen, LLP*, No. 22-15233

CHRISTEN, Circuit Judge, concurring:

I join in full the majority's decision that any violation of the Fair Credit Reporting Act (FCRA) in this case was not "willful" within the meaning of 15 U.S.C. § 1681n(a). On that basis, I agree that the district court correctly granted summary judgment in defendant's favor. I write separately because FCRA provides important privacy protections for consumers, there are likely millions of homeowners in the Ninth Circuit subject to Homeowners Association (HOA) assessments, and I question whether a typical HOA assessment qualifies as a "credit transaction" that authorizes an HOA to obtain a homeowner's credit report.

FCRA permits a creditor to obtain a credit report in only six enumerated circumstances. The relevant FCRA provision in this case permits a creditor to obtain a report when the creditor "intends to use the information in connection with a *credit transaction* involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C.A. § 1681b(a)(3)(A) (emphasis added). The district court concluded that the HOA's actions in this case were authorized by FCRA based on our decision in *Brothers v. First Leasing*, 724 F.2d 789 (9th Cir. 1984). There, the defendant refused to lease an automobile to Brothers in her own name because her husband had previously declared bankruptcy. *Id.* at 790–91.

1

Brothers sued under the Equal Credit Opportunity Act (ECOA), alleging that the defendant unlawfully discriminated against her in a "credit transaction." *Id.* Our court broadly construed the meaning of "credit" and "credit transaction" in ECOA based on the anti-discrimination purpose of that statute, and we held that ECOA applied to consumer leases. *Id.* at 795–96. FCRA incorporates ECOA's definitions of "credit" and "creditor," but FCRA serves a very different purpose from ECOA's anti-discrimination goal. FCRA protects consumer privacy. 15 U.S.C. § 1681(a)(4). A broad construction of the term "credit transaction" is consistent with ECOA's goal of preventing discrimination, but it runs contrary to FCRA's purpose of protecting consumer privacy.

FCRA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. §§ 1681a(r)(5), 1691a(d). "[C]reditor," refers to "any person who regularly extends, renews, or continues credit." 15 U.S.C. §§ 1681a(r)(5), 1691a(e). In this case, Wolf did not dispute that her HOA qualifies as a creditor, but, in my view, it is far from clear that an HOA "regularly extends, renews, or continues credit" within the meaning of FCRA, 15 U.S.C. §§ 1681a(r)(5), 1691a(e), when it collects monthly assessments and dues. There is no evidence the HOA was involved in Wolf's home purchase process, there is no indication that it evaluated Wolf's credit when she purchased her home,

2

and the HOA did not set the terms of its assessments' 15-day grace period, which Arizona law requires, *see* Ariz. Rev. Stat. § 33-1803(A).

Nor is it clear under our case law that an HOA assessment is a "credit transaction" for purposes of the FCRA exception invoked in this case. In *Pintos v. Pacific Creditors Ass'n*, we explained that a "credit transaction" must: "(1) be 'a credit transaction involving the consumer on whom the information is to be furnished' and (2) involve 'the extension of credit to, or review or collection of an account of, the consumer.'" 605 F.3d 665, 674 (9th Cir. 2010) (quoting 15 U.S.C. § 1681b(a)). Consistent with FCRA's privacy purpose, *Pintos* explained that the word "involving" must be read narrowly and means the consumer was "drawn in as a participant in the transaction, but not [that] she [wa]s obliged to become associated with the transaction." *Id.* at 675 (original alterations accepted) (citation and internal quotation marks omitted). *Pintos* explained that a participant is "drawn in" to a transaction only if she initiates it. *Id.* We rejected the argument that Pintos initiated a credit transaction with a towing company for impound charges merely because she owned the car it impounded. *Id.* Our conclusion that Pintos did not involve herself in a credit transaction with the towing company was bolstered by other circumstances: Pintos did not "participate in seeking credit from the towing company," she "had no contact" with the company until it towed her

3

car, "she never asked to have the vehicle towed," and she did not initiate the transaction that resulted in the credit report request. *Id.*

Here, the district court reasoned that Wolf was involved in a transaction with her HOA because she purchased a home while being aware of the relevant HOA covenants and restrictions. It is easy to see that a homeowner voluntarily initiates a "credit transaction" with a mortgage lender when she purchases a home, because lenders voluntarily decide to extend credit to home buyers, and home buyers "participate in seeking credit" from mortgage lenders. In that situation, FCRA quite sensibly authorizes lenders to obtain consumers' credit reports. But the same cannot be said of the relationship between a homeowner and an HOA, because homeowners do not typically "participate in seeking credit" from HOAs, nor do HOAs decide whether to extend credit to homeowners. The conclusion that Wolf initiated a credit transaction with the HOA is arguably in tension with our holding in *Pintos*. As the Seventh Circuit has explained, "the plain meaning of 'credit transaction' [in FCRA] contemplates an agreement by which the right of deferred payment is promised in exchange for some form of consideration." *See Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1195 n.5 (7th Cir. 2021). No such agreement ordinarily exists between homeowners and HOAs issuing monthly assessments. Defendant argued that the HOA extended credit to Wolf because it

4

allowed a fifteen-day grace period for members to pay their assessments. But as explained, this grace period was legally required.

It is hard to imagine that Congress intended FCRA, a statute that protects consumer privacy, to empower HOAs composed of neighboring homeowners to run their neighbors' credit reports if homeowners fall two weeks behind in their payments. In the right case, our court should revisit this issue.