**JAPAN TELECOM, INC., a California corporation, Plaintiff–Appellant,**

v.

**JAPAN TELECOM AMERICA INC., Defendant–Appellee.**

**No. 00–56012.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 2001.

Filed April 24, 2002.

Paul D. Gruen of the Law Offices of
Jose Mariano Castillo, Los Angeles, CA,

argued for appellant Japan Telecom, Inc. Jose Mariano Castillo of the same firm and Ben K. Takahashi of Takahashi Law Corporation, Los Angeles, CA, assisted on the brief.

Victor H. Polk, Jr. of Bingham Dana LLP, Boston, MA, argued for appellee Japan Telecom America, Inc. Rheba Rutkowski, of the same firm, assisted on the brief.

Before: HALL, KOZINSKI and W. FLETCHER, Circuit Judges.

## OPINION

KOZINSKI, Circuit Judge.

Japan Telecom, Inc. ("Japan Telecom") sells and installs telephone and computer networking equipment in the Los Angeles area. Japan Telecom is a California corporation, and a subsidiary of Hasegawa Company, Ltd., a small Japanese corporation. After Japan Telecom had been in business for fourteen years, a new kid on the block showed up: Japan Telecom America, Inc. ("Japan Telecom America"). Japan Telecom America is the United States subsidiary of Japan Telecom Company, Ltd., the third-largest telecommunications company in Japan. While Japan Telecom's business mostly involves the installation of telephone and computer networks, Japan Telecom America sells telecommunications transmission services, including both long-distance telephone and data.

Japan Telecom sued Japan Telecom America in federal court, alleging that Japan Telecom America's use of the "Japan Telecom" name constituted trademark infringement and unfair competition. Later, Japan Telecom sued Japan Telecom America in California state court for unfair competition and trade name infringement on the same theory. Japan Telecom America removed the state suit to federal court, and the district court consolidated the two actions. Japan Telecom's consolidated complaint alleges trade name infringement and unfair competition under the Lanham Act, unfair competition under California law, and "trade name violation under state law."

The district court granted Japan Telecom America's motion for summary judgment on all claims, holding that Japan Telecom had unclean hands. Japan Telecom appeals.

## Unclean Hands

"Unclean hands is a defense to a Lanham Act infringement suit." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir.1987). Trademark law's unclean hands defense springs from the rationale that "it is essential that the plaintiff should not in his trade mark, or in his advertisements and business, be himself guilty of any false or misleading representation." *Worden v. Cal. Fig Syrup Co.*, 187 U.S. 516, 528, 23 S.Ct. 161, 47 L.Ed. 282 (1903). To make out an unclean hands defense, a trademark defendant "must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." *Fuddruckers*, 826 F.2d at 847.

To show that a trademark plaintiff's conduct is inequitable, defendant must show that plaintiff used the trademark to deceive consumers, *see Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir.1989) ("Bad intent is the essence of the defense of unclean hands.") (citing *Wells Fargo & Co. v. Stagecoach Props., Inc.*, 685 F.2d 302, 308 (9th Cir.1982)); *Republic Molding Corp. v.*

*B.W. Photo Utils.*, 319 F.2d 347, 350 (9th Cir.1963).

■ The district court held that Japan Telecom had unclean hands solely because "the name by which plaintiff calls itself is deceptive." Reasoning that the trade name "Japan Telecom, Inc." suggests a company of Japanese origin, the district court held that Japan Telecom's trade name is "primarily geographically deceptively misdescriptive." Further, because "Japan is noted for its electronics and telecommunications products," Japan Telecom's name "undoubtedly leads consumers to think of the country." The district found that this "deception is especially acute" because "plaintiff specifically targets the Japanese American community." Members of that community, the district court reasoned, are particularly susceptible to false claims of Japanese origin because they "may be interested in the country of origin" more than the rest of the purchasing public. The district court did not find that any consumers had actually been deceived.

■ The district court erred in finding that Japan Telecom's trade name is primarily geographically deceptively mis-descriptive. "Whether a mark is primarily geographically deceptively misdescriptive is a question of fact." *In re Save Venice New York, Inc.*, 259 F.3d 1346, 1351 (Fed. Cir.2001). It may only be resolved on summary judgment if the evidence presented by both sides would permit the trier of fact to come to only one conclusion.

■ A mark is primarily geographically deceptively misdescriptive if "(1) the mark's primary significance is a generally known geographic location; and (2) consumers would reasonably believe the [marked] goods are connected with the geographic location in the mark, when in

fact they are not." *In re Save Venice New York, Inc.*, 259 F.3d at 1352.

■ The parties dispute whether the name "Japan Telecom, Inc." refers to a geographic location. While it is tempting to conclude that "Japan" means "Japan, the country," we cannot examine a trademark or trade name's individual words in isolation. *See Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1147–51 (9th Cir.1999). Using the name of a country in a trade name does not automatically make the trade name geographically descriptive; instead, we must look to whether consumers would reasonably believe that the term is being used geographically. *See In re Save Venice New York, Inc.*, 259 F.3d at 1352.

The district court erred by ignoring Japan Telecom's evidence that consumers might understand the word "Japan" in its name as referring to a specific ethnic community, rather than the country. Japan Telecom argues that customers seeing its advertising are familiar with a convention of using the word "Japan" in a business' name to indicate that the business caters to Japanese-speaking customers. Japan Telecom offered an affidavit from Chieko Mori, the president of a company that publishes a telephone directory of businesses catering to the "local Japanese community in California." Mori stated that over eighty companies with the word "Japan" in their name—including "Japan Pilot Club," "Japan Landscaping, Inc.," and "Japan Printing Service"—advertise in Mori's directory, but only a few of those are affiliated with companies in Japan.

■ [7] Japan Telecom America offered evidence that there is a pattern in the telecommunications industry of using the word "Telecom" after a country's name to signify geographic origin—such as "Deutsche Telecom," "China Telecom," and "British Telecom." Without any evi-

dence of widespread knowledge of this pattern of naming countries, this does not establish that consumers would reasonably believe that Japan Telecom was connected with Japan. At best, it only raises an inference that Japan Telecom's trademark may have confused customers. On summary judgment, the district court must draw all inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir.2001). Japan Telecom presented contrary evidence on this point, and therefore created a triable issue of fact.

Japan Telecom America did not meet its burden of showing that customers "would reasonably believe [Japan Telecom's services] are connected with" Japan for yet another reason. *In re Save Venice New York, Inc.*, 259 F.3d at 1352. Japan Telecom's business is primarily service-related: It installs and maintains telephone and computer networking equipment. Japan Telecom also acts as a sales agent for MCI, a well-known American long distance company. Incident to its services, Japan Telecom sells goods (like telephones and network routers), but there is no evidence that Japan Telecom marks those goods with "Japan Telecom." When services are performed on a customer's site, the customer is unlikely to associate the service with any geographic region other than where the services are performed. Because Japan Telecom can only perform its services in person and on customer premises, it is hard to see how a reasonable customer could conclude that the technician installing his new phone wiring just came off a jet from Tokyo, equipped with the very latest in Japanese wiring know-how.

The district court found that Japan Telecom's use of the word "Japan" played on a popular notion that Japan excels in telecommunications and electronics. But the court did not cite to any evidence that customers have such a favorable impression of Japan's telecommunications industry. Even if there were such evidence, it would hardly follow that the use of the name "Japan Telecom" misled consumers into inferring that Japan Telecom was affiliated with Japan. Our examination of the record reveals at best a disputed issue of fact on this question. We also find no evidence that the consumers Japan Telecom targets would be more likely to hold these views.

### Trademark Infringement

■■■■■ To prevail on its infringement claim, Japan Telecom must have a protectable trade name. Trademark law groups terms into four categories: "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *Filipino Yellow Pages*, 198 F.3d at 1146 (internal quotation marks omitted). Generic terms do not "relate exclusively to the trademark owner's product" because they are common words or phrases that "describe a class of goods rather than an individual product." *New Kids on the Block v. New Am. Publ'g, Inc.*, 971 F.2d 302, 306 (9th Cir.1992). Descriptive terms, however, "describe[ ] a person, a place or an attribute of a product." *Id.* They suffer from the same problem as generic terms: Because they tend to consist of common words that might be the only way to describe a category of goods, we do not grant exclusive property rights in them. *Id.* Nonetheless, a descriptive term can become protectable "provided that it has acquired 'secondary meaning' in the minds of consumers, i.e., it has become distinctive of the trademark applicant's goods in commerce." *Filipino Yellow Pages*, 198 F.3d at 1147 (internal quotation marks omitted). Terms that are suggestive, or "arbitrary and fanciful," are protectable without a showing of secondary meaning.

■ Japan Telecom America argues that "Japan Telecom" is descriptive, while Japan Telecom argues that it is suggestive. In deciding who's right, we look at "the imaginativeness involved in the suggestion, that is, how immediate and direct is the thought process from the mark to the particular product. If the mental leap between the word and the product's attribute is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness." *Self–Realization Fellowship Church v. Ananda Church of Self–Realization*, 59 F.3d 902, 911 (9th Cir.1995) (internal quotation marks and citation omitted).

"Japan Telecom" as used by Japan Telecom is descriptive, not suggestive. Japan Telecom's trade name leaves very little to the imagination. Japan Telecom is in the telecommunications business, and its name says so. Consumers who are familiar with the convention of using "Japan" to refer to a business that caters to the Japanese community will immediately understand Japan Telecom's niche. Consumers who don't will still not need to make any mental leap between Japan Telecom's name and what it does.

■ Because Japan Telecom's trade name is descriptive, it is not protectable unless Japan Telecom shows that the name has acquired secondary meaning. This requires showing that there is "a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source." *Self–Realization Fellowship Church*, 59 F.3d at 911 (*quoting Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 820 (9th Cir.1980)). Secondary meaning is a question of fact, *see Clicks Billiards*, 251 F.3d at 1262, so to survive summary judgment Japan Telecom was required to come forward with enough evidence of secondary meaning to establish a genuine dispute of fact. *See* Fed.R.Civ.P. 56(e).

■ In evaluating the sufficiency of evidence of secondary meaning, we look to a number of factors, including "(1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 822 (9th Cir.1996) (internal quotation marks omitted). When descriptive marks are especially "weak," we require a "strong showing of strong secondary meaning." *Filipino Yellow Pages*, 198 F.3d at 1151.

■ Here, Japan Telecom hopes to establish secondary meaning through evidence of actual confusion. Japan Telecom's president, Yoshio Hasegawa, stated in a declaration that Japan Telecom received several telephone calls and "many" letters apparently intended for Japan Telecom America. Two of these letters were attached to Hasegawa's declaration: an office supply company invoice, and a mailing from a Japanese business newspaper addressed to "Yuko Yogi, President, Japan Telecom, Incorporated." (Japan Telecom America says that it has never employed anyone named "Yuko Yogi," as president or otherwise.) For its part, Japan Telecom America claims that it has not received any letters or telephone calls intended for Japan Telecom.

■ This is not enough evidence of actual confusion to establish secondary meaning. We agree with the district court that Hasegawa's affidavit lacks foundation for his statement that Japan Telecom received "many" letters and "several" calls,

because Hasegawa does not state that he personally opens Japan Telecom's mail and answers its phone. The two letters attached to Hasegawa's affidavit are admissible, but they aren't enough. While we have held that seventy-six letters and invoices intended for defendant but sent to plaintiff can be evidence of secondary meaning, *see Am. Scientific Chem., Inc. v. Am. Hosp. Supply Corp.*, 690 F.2d 791, 793 (9th Cir.1982), evidence of only two incorrectly addressed letters—one of them from a supplier rather than a buyer and the other possibly not even intended for Japan Telecom America—is not enough to establish that buyers have come to associate the term "Japan Telecom" with a single company. Even if both mailings were intended for Japan Telecom America, such a low volume of misdirected mailings could have been the result of clerical errors rather than a belief that "Japan Telecom" only refers to Japan Telecom.

Japan Telecom attempts to prove actual confusion in another way. It presents six declarations from Japanese–American business owners in Southern California, each containing a more or less identical paragraph: "I have been seeing advertisement of 'Japan Telecom America' recently. First, I was confused with Mr. Hasegawa's company, but soon I figured out that it was a different company. According to my information and belief, however, many people are still confused by the similar names of two companies. [sic]" One of these declarants elaborates by noting that he "was really confused" when, after it took over his former long distance provider, Japan Telecom America began sending him bills for long distance service bearing the words "Japan Telecom." Later he realized that "it was not Mr. Hasegawa's Japan Tele-

com, Inc." that was sending him the bills. All of the declarations also contain some version of this paragraph: "I personally know that Japan Telecom, Inc. has been doing telecommunication business in Los Angeles area for many years. When I hear or read the name of Japan Telecom, I could immediately tell that it was the company of Mr. Hasegawa in Los Angeles."

This is not enough to establish a "mental recognition in buyers' and potential buyers' minds" between Japan Telecom's trade name and a single source. *Self-Realization Fellowship Church*, 59 F.3d at 911. These declarations all come from business owners who "personally" knew that Japan Telecom had been in business for years. At least one declarant was a former customer. All of the declarants identify the mark "Japan Telecom" not only with plaintiff, but also with its president, "Mr. Hasegawa," whom they know by name. Although all the declarants claim to have the sort of mental recognition that's characteristic of secondary meaning, Japan Telecom has not come forward with evidence that they formed this recognition for any reason other than their personal relationships with Japan Telecom or its president. Consequently, their declarations are not persuasive evidence that a significant number of consumers have formed a similar mental association.[1] Had they formed their mental association with Japan Telecom because of some stimulus that was just as likely to affect members of the buying public as it was likely to affect them (such as advertising), their declarations would have been more persuasive. Every small business with a descriptive name can point to at least a few former customers who remember its name, and every small business owner can point to some acquaintances familiar with what he

---

1. We give no weight to the declarants' statements that they knew of others who were confused by the similarity of the two marks, because these statements lack foundation and constitute hearsay.

does for a living. None of that means that the relevant buying public makes the same associations.

■ Turning to Japan Telecom's other evidence, Japan Telecom notes that it has been using its name since 1984 and has advertised in the annual Japanese Telephone Directory & Guide eleven times. In examining whether a plaintiff's advertising is enough to establish secondary meaning, we look at the advertising's "amount, nature and geographical scope" with an eye towards how likely the advertising is to expose a large number of the relevant consuming public to the use of the symbol as a trademark or trade name. *Am. Scientific Chem., Inc.,* 690 F.2d at 793. Here, Japan Telecom has pursued an advertising strategy that is likely to reach only members of the Japanese and Japanese American business communities in Southern California. Because Japan Telecom's phone directory advertisements appeared in a "yellow pages" section, only individuals who had already decided to look up a phone number for a telephone installation company in the specialized phone directory were likely to see Japan Telecom's name. Even those individuals would have to have gotten as far as "J" to be exposed to Japan Telecom's entry, because Japan Telecom did not always pay for display advertisements. Giving Japan Telecom the benefit of the doubt, it has at most shown that a tiny subset of relevant buyers has ever seen its ads. Similarly, while Japan Telecom has been using its name since 1984 (and, for most of that time, exclusively), there is no evidence that it has used it in such a way that any more than a small set of buyers has gained any familiarity with it.

■ This is not enough to establish secondary meaning. To take a descriptive term out of the public domain, a plaintiff must demonstrate that the relevant buying public accords it secondary meaning.

Here, because Japan Telecom limits its operations to Southern California, the relevant buying public consists at least of buyers of telephone and network installation services in that region. *See* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 15:46 (2001). Japan Telecom has not come forward with enough evidence to show that those buyers associate "Japan Telecom" with a single source.

None of Japan Telecom's evidence creates a genuine issue of fact as to secondary meaning. Consequently, its trade name is not protectable. We affirm, on these alternate grounds, the district court's grant of summary judgment to Japan Telecom America on Japan Telecom's Lanham Act claims.

### State Law Claims

Japan Telecom also sues for "unfair competition under state law" and "trade name violation under state law." Japan Telecom's California unfair competition claim fails because its related Lanham Act claims fail. *See Denbicare U.S.A. Inc. v. Toys "R" Us, Inc.,* 84 F.3d 1143, 1152 (9th Cir.1996) ("[S]ince dismissal of [plaintiff's] Lanham Act claim was proper, dismissal of its § 17200 claim was proper as well.").

Japan Telecom also claims injunctive relief under the California Trade Name Statute, Cal. Bus. & Prof.Code §§ 14401 14418. Japan Telecom argues that it does not need to show secondary meaning in order to prevail under that statute. The only authority Japan Telecom cites for this proposition is *Golden Door, Inc. v. Odisho,* 437 F.Supp. 956 (N.D.Cal.1977), which holds without analysis that "[t]he California trade name statute does not require plaintiff to prove a secondary meaning or actual confusion." *Id.* at 967. Japan Telecom claims we adopted this holding in *American Petrofina, Inc. v. Petrofina of Cal., Inc.,* 596 F.2d 896, 899 (9th Cir.1979),

but is mistaken. *American Petrofina* cited *Golden Door* for an unrelated proposition, and merely summarized its secondary meaning holding in a parenthetical without adopting it.

 We do not find *Golden Door* persuasive. California courts do require plaintiffs suing under the California Trade Name Statute to establish secondary meaning when their trade names are descriptive. *See Cowles Magazines & Broad., Inc. v. Elysium, Inc.*, 255 Cal. App.2d 731, 63 Cal.Rptr. 507, 510 (Cal. App.1967) ("Protection of the use of a tradename composed of one or more words of common usage rests on proof that the name or mark has acquired a meaning other than its primary meaning."); *Family Record Plan, Inc. v. Mitchell*, 172 Cal. App.2d 235, 342 P.2d 10, 15 (Cal.App.1959) ("While section 14400 ... provides that the acquisition of a trade name is dependent upon its first use, the courts generally apply the common law rule of secondary meaning to trade names...."). We are not aware of any California case that holds otherwise. A contrary rule would allow individual corporations to claim, by filing articles of incorporation, the exclusive right to use everyday words in a business name. We doubt that California's legislature intended to give away pieces of the English language, or that it could do so without violating the First Amendment. Because California law requires secondary meaning for descriptive trade names before protecting them, Japan Telecom's claim under the California Trade Name Statute fails.

We therefore affirm the district court's grant of summary judgment for Japan Telecom America on the state law claims.

**AFFIRMED.**