Raul CAIZ, Plaintiff,

v.

William Leonard ROBERTS II, aka Mastermind aka Rick Ross, Universal Music Group, Inc., Def Jam Records, Inc., Maybach Music Group, LLC, Defendants.

CV No. 15–09044–RSWL–AGRx

United States District Court, C.D. California.

Signed 12/15/2016

Heleni E. Suydam, Kris Demirjian, Leonard S. Sands, Sands and Associates PLC, Beverly Hills, CA, Sevag Demirjian, Demirjian Law Offices, Woodland Hills, CA, for Plaintiff.

Craig E. Holden, Joshua S. Hodas, Lewis Brisbois Bisgaard and Smith LLP, Los Angeles, CA, Leron E. Rogers, Lewis Brisbois Bisgaard and Smith LLP, Atlanta, GA, for Defendants.

## ORDER Re: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [44]

HONORABLE RONALD S.W. LEW, Senior United States District Judge

### I. INTRODUCTION

Currently before the Court is Defendants William Leonard Roberts II aka Mastermind aka Rick Ross ("Roberts"), Universal Music Group, Inc. ("Universal"), Def Jam Records, Inc., ("Def Jam"), and Maybach Music Group, LLC's ("Maybach") (collectively, "Defendants") Motion for Summary Judgment [44]. The Court, having reviewed all papers and arguments submitted pertaining to this Motion, **NOW FINDS AND RULES AS FOLLOWS:** Defendants' Motion for Summary Judgment [44] is **GRANTED.**

### II. BACKGROUND

#### A. Factual Background

Plaintiff's claims against Defendants include Federal Trademark Infringement pursuant to 15 U.S.C. § 1114, a violation of the Lanham Act, 15 U.S.C. § 1125(a), Federal Trademark Dilution, Unfair Enrichment, Unfair Competition, and Misappropriation. Compl. ¶¶ 39–65. Plaintiff is a hip-hop music artist. Id. at ¶ 2. Plaintiff owns the trademark rights to "Mastermind." Id. Roberts is also a hip-hop artist. Id. at ¶ 3. Plaintiff alleges Defendants have wilfully infringed on Plaintiff's trademark rights by releasing an album entitled "Mastermind," titling Roberts' tour "Mastermind," and Roberts taking on the persona of "Mastermind," causing confusion in the marketplace. Id. Defendants filed a Counterclaim of cancellation of the federal trademark registration under 28 U.S.C. § 2201(a) and 15 U.S.C. §§ 1119, 1064.

Counterclaim ¶ 5. Defendants allege the "Mastermind" mark is invalid because it is a generic and/or merely descriptive term that has not acquired a secondary meaning and Plaintiff has abandoned the mark. Id. at ¶ 12.

## B. Procedural Background

On November 20, 2015, Plaintiff filed a Complaint in this Court [1]. On February 16, 2016, Defendants filed an Answer [18]. On February 18, 2016, Defendants filed a Counterclaim against Plaintiff [22]. On March 8, 2016, Plaintiff filed an Answer to the Counterclaim [23]. On October 7, 2016, Defendants filed the instant Motion for Summary Judgment along with a Statement of Undisputed Facts and Conclusions of Law [44][45]. On October 7, 2016, Defendants also filed a Request for Judicial Notice [46]. On October 18, 2016, Plaintiff filed an Opposition to the Motion for Summary Judgment along with a Statement of Disputed Facts and an Opposition to Defendants' Statement of Undisputed Facts [52]. On October 25, 2016, Defendants filed a Reply [53].

## III. DISCUSSION

### A. Legal Standard

#### 1. Motion for Summary Judgment

Federal Rule of Civil Procedure 56 states that a "court shall grant summary judgment" when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine issue" exists if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the opposing party. Twentieth Century–Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1329 (9th Cir. 1983). In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. Anderson, 477 U.S. at 255, 106 S.Ct. 2505.

Under Rule 56, the party moving for summary judgment has the initial burden to show "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); see Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000). The burden then shifts to the non-moving party to produce admissible evidence showing a triable issue of fact. Nissan Fire & Marine Ins., 210 F.3d at 1102–03; see Fed. R. Civ. P. 56(a). When a defendant moves for summary judgment, summary judgment "is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805–06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The standard for a motion for summary judgment "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement; the requirement is that there be no *genuine* issues of *material* fact." Anderson, 477 U.S. at 247–48, 106 S.Ct. 2505.

### B. Findings of Fact

1. Plaintiff owns a federal registration in the trademark "Mastermind." Plaintiff applied for registration on December

24, 2005 and the registration was approved on July 16, 2013 in Classes 009 and 41, Registration No. 4,366,332. Defs.' Statement of Undisputed Facts ¶ 1; Compl. ¶ 25.

2. Class 009 consists of: audio recordings featuring music; downloadable musical sound recordings; downloadable video recordings featuring music; musical sound recordings; musical video recordings; pre-recorded CD's, video tapes, laser disks and DVD's featuring music; video recordings featuring music; visual recordings and audio visual recordings featuring music and animation, excluding content consisting of general knowledge questions, quizzes and games. Defs.' Ex. 1. Class 41 consists of: Entertainment in the nature of live performances by a performer or group; [entertainment in the nature of visual and audio performances, and musical, variety, news and comedy shows; entertainment in the nature of visual and audio performances, namely, musical band, rock group, gymnastics, dance and ballet performances; entertainment, namely, live performances by a musical band;] entertainment services, namely, providing a web site featuring musical performances, musical performances, musical videos, related film clips, photographs, and other multimedia materials; entertainment services, namely, providing prerecorded music, information in the field of music, and commentary and articles about music, all on-line via a global computer network, entertainment, namely, live music concerts; entertainment, namely, live performances by musical bands, excluding general knowledge questions, quizzes, and games. Id.

3. On February 24, 2012, Plaintiff amended the Statement of Use and deleted "video tapes, laser disks and DVD's featuring music." Defs.' Statement of Undisputed Facts ¶ 3.

## C. Analysis

### 1. Defendants' Request for Judicial Notice is Granted

■ As an initial matter, Defendants request the Court take judicial notice of the United States Patent and Trademark Office ("USPTO") "File History" for Registration No. 4,366,332 for the "Mastermind" mark which was downloaded from the USPTO web site on September 14, 2016. Defs.' Req. for Judicial Notice 1:2–12.

■ A court may take judicial notice of a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Plaintiff did not object to the Court taking judicial notice of the "File History." VMR Products, LLC v. V2H ApS, No. 2:13–CV–7719–CBM–JEMX, 2016 WL 1177834, at *1 (C.D. Cal. Mar. 18, 2016). Courts may also take judicial notice of " 'records and reports of administrative bodies,' file histories, and application materials." Balance Studio, Inc. v. Cybernet Entm't, LLC, No. 15–CV–04038–DMR, 2016 WL 1559745, at *1 (N.D. Cal. Apr. 18, 2016)(quoting Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986)); see Oroamerica Inc. v. D & W Jewelry Co., Inc., 10 Fed.Appx. 516, 517 n.4 (9th Cir. 2001).

Because the document is not subject to reasonable dispute, is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, and is a matter of public record, see Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001), the Court **GRANTS** Defendants' Request for Judicial Notice of the "File History" for Registra-

tion No. 4,366,332 for the "Mastermind" mark.

### 2. The Trademark for "Mastermind" Should be Cancelled because it is a Descriptive Term and has not Acquired Secondary Meaning

■ Courts have the power to order the cancellation of registrations in whole or in part. 15 U.S.C. § 1119. Defendants contend the registration for "Mastermind" should be cancelled because it is a descriptive term that has failed to acquire secondary meaning. Mot. 5:4–10. Plaintiff argues that the mark is not descriptive but suggestive entitling the mark to trademark protection. Opp'n 8:20. Even if it is descriptive, it has acquired secondary meaning. Id. at 12:10–12.

■ "When a plaintiff pursues a trademark action involving a properly registered mark, that mark is presumed valid, and the burden of proving that the mark is generic rests upon the defendant." Solid 21, Inc. v. Hublot of America, 109 F.Supp.3d 1313, 1322 (C.D. Cal. 2015)(citing Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927 (9th Cir. 2005)). While 15 U.S.C. § 1115(a) does state that a registration is admissible and is "prima facie evidence of the validity of the registered mark and of the registration of the mark," the section goes on to say that it "shall not preclude another person from proving any legal or equitable defense or defect." Therefore, while there is a presumption of validity, Defendants can attack that presumption on a motion for summary judgment.

■ Courts have classified trademarks in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. Solid 21, 109 F.Supp.3d at 1323 (citing Zobmondo Entm't, LLC, v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir.

2010)). The last three classifications are automatically protected "because they identify a product's source." Id. (citing Yellow Cab, 419 F.3d at 927). " '[D]escriptive marks, which describe the qualities or characteristics of a product, may be registered only if the holder of the mark shows that the mark has acquired distinctiveness through secondary meaning.' " Id. (quoting KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 602 (9th Cir. 2005)); see also Zobmondo Entm't, 602 F.3d at 1113 (finding descriptive marks must have secondary meaning to be protected).

■ Courts look to the thought process from the mark to the actual product finding that "[i]f the mental leap between the word and the product's attribute is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness." Self–Realization Fellowship Church v. Ananda Church of Self–Realization, 59 F.3d 902, 911 (9th Cir. 1995)(citations omitted). "A trademark is descriptive if it describes the product to which it refers or its purpose." Self–Realization Fellowship, 59 F.3d at 910 (citations omitted). A trademark is suggestive "if 'imagination' or a 'mental leap' is required in order to reach a conclusion as to the nature of the product being referenced." Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1198 (9th Cir. 2009)(quoting Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc., 198 F.3d 1143, 1147 n.3 (9th Cir. 1999)).

A court's determination of whether a mark is suggestive or descriptive is not as clear as one would hope and is not as objective as one would think. Zobmondo Entm't, 602 F.3d at 1114; Lahoti, 586 F.3d at 1197. The dictionary definition may be relevant in the analysis of whether a mark is descriptive because it shows how the public may view the mark and what, if any,

mental step is needed. Zobmondo Entm't, 602 F.3d at 1116; see Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co., 601 F.2d 1011, 1015 n.11 (9th Cir. 1979)("While not determinative, dictionary definitions are relevant and often persuasive in determining how a term is understood by the consuming public ..."); cf. Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1142 (9th Cir. 2002)(holding that "Entrepreneur" is merely descriptive as the name of a magazine because an "entirely unimaginative, literal-minded person" would understand its meaning).

■ The issue for the Court to determine is whether "Mastermind" is descriptive with respect to Plaintiff's audio and visual recordings, live performances, and the other goods and services in Classes 009 and 41. It is difficult for the Court to conclude, as Plaintiff suggests, that a consumer would need to make a mental leap to conclude that "Mastermind" is attributed to Plaintiff's goods and services. "Descriptive terms 'describe[ ] a person, a place or an attribute of a product.' " Japan Telecom, Inc. v. Japan Telecom America Inc., 287 F.3d 866, 872 (9th Cir. 2002) (quoting New Kids on the Block v. News Am. Publ'g, Inc., 971 F.2d 302, 306 (9th Cir. 1992)). Defendants assert that "Mastermind" is descriptive as it applies to "creative artists," based on Oxford Dictionary's definition of "Mastermind" as "a person with an outstanding intellect" and the first usage example references "an eminent musical mastermind." Reply 6:5–15. Plaintiff utilizes Merriam–Webster's definition of "Mastermind" which means "to plan and organize something" as a noun and as a verb "a person who plans and organized something." Opp'n 7:16–20. Of interest, Merriam–Webster also includes a definition of "Mastermind" as "a person who supplies the directing or creative intelligence for a project." https://www.

merriam-webster.com/dictionary/mastermind.

Moreover, the overwhelming evidence provided by Defendants—that so many others in the rap industry have utilized the mark "Mastermind" in album titles, web sites, and song lyrics—refutes Plaintiff's assertion that such a mental leap or imagination is required to attribute "Mastermind" to audio and visual recordings, audio recordings featuring music, musical video recordings, live performances, and other goods and services noted in Classes 009 and 41. Therefore, the Court finds that the "Mastermind" mark is descriptive.

■ The question of whether a trademark has acquired secondary meaning is one of fact. Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1355 (9th Cir. 1985) (en banc). However, that does not preclude the Court, on a motion for summary judgment, from determining whether Plaintiff has provided a genuine issue of material fact as to whether a mark has obtained secondary meaning. Yellow Cab, 419 F.3d at 930. Plaintiff needs to provide enough evidence showing secondary meaning to establish a genuine dispute of fact. Japan Telecom, 287 F.3d at 873; see Fed. R. Civ. P. 56(e).

■ If a trademark that is descriptive lacks secondary meaning, it is invalid. Bada Co. v. Montgomery Ward & Co., 426 F.2d 8, 11 (9th Cir. 1970). To acquire secondary meaning, section 1052(f) requires that the mark must have become "distinctive of the applicant's goods." 15 U.S.C. § 1052(f); Filipino Yellow Pages, 198 F.3d at 1147. "The basic element of secondary meaning is a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source." Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d 817, 820 (9th Cir. 1980). A mark has acquired secondary meaning if buyers and potential buyers

automatically associate the mark with Plaintiff. Self–Realization Fellowship, 59 F.3d at 911–12 (holding Plaintiff failed to establish "Self–Realization" acquired secondary meaning because members of the American Hindu–Yoga community believed the mark was a spiritual state of mind and did not automatically associate a "Self–Realization" product with Plaintiff).

There are many ways to establish if a trademark has acquired secondary meaning. These include: direct consumer testimony; survey evidence; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant. Filipino Yellow Pages, 198 F.3d at 1151. A plaintiff " 'must show that the primary significance of the term in the minds of the consuming public is not the product but the producer.' " Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1015 (9th Cir. 1985)(quoting Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73 (1938)). Other factors to consider include: "(1) whether actual purchases of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." Id. (citing 1 Gilson, Trademark Protection & Practice, § 2.09[1] ). Expert surveys can be extremely persuasive as evidence of secondary meaning. Levi Strauss, 778 F.2d at 1358.

Plaintiff argues that there is confusion in the marketplace between Plaintiff and Roberts. Opp'n 6:23–26. However, Plaintiff has not provided any evidence to show this actual confusion. His personal and conclusory statements and assertions are not enough. Japan Telecom, 287 F.3d at 873–

75 (finding that two incorrectly addressed pieces of mail was not sufficient to show actual confusion that buyers had come to associate "Japan Telecom" with just one company). The court in Japan Telecom held that Plaintiff's advertising from 1984 was not sufficient to establish secondary meaning because when looking to the amount, nature, and geographical scope of the advertisement, there was not sufficient evidence that the mark was used in a way "that any more than a small set of buyers had gained any familiarity with it" since the advertisement was geared to the Japanese community in Southern California. Id. at 873–75.

Plaintiff has failed to show a genuine issue of material fact that disproves Defendants assertion that there are numerous artists, web sites, album titles, and song lyrics that all utilize "Mastermind" in one form or another. Mot. 3:16–27; 4; Defs.' Statement of Undisputed Facts ¶¶ 22–24. Plaintiff's argument that the fact the social media platform Myspace currently has dozens of musicians utilizing "Mastermind" is irrelevant because the website is not a relevant, active, or popular website is unavailing. Pl.'s Opp'n to Disputed Facts 11:20–13:12. The fact that a website is not as popular as it once was does not change the fact that it does exist and there are other artists utilizing "Mastermind" in one form or another.

Additionally, Plaintiff fails to create a genuine dispute of fact that "Mastermind" is widely used as a descriptive term by other rappers, in album titles, and song lyrics by his statement that he is the only hip-hop artist who owns the trademark for "Mastermind." The fact that he is the only registered trademark owner of "Mastermind" does not change the very fact that it is being used by others. And Plaintiff's conclusory statement that he is the only person in the hip-hop industry on the West

Coast to use it does not create an issue of fact. Without actual evidence, Plaintiff fails to show that buyers or potential buyers would only connect "Mastermind" to Plaintiff. Defendants have shown the numerous other uses of "Mastermind" by other individuals making it clear that use of the trademark has not been exclusive. Defs.' Exs. F, G, H, I. These include: a Myspace search of "Mastermind" with numerous results of other individuals using "Mastermind" (not only Plaintiff) and several articles and web sites depicting artists using "Mastermind" in song titles, album names, as an artist name, or in reference to a characteristic of an artist. Id.

While Plaintiff did provide flyers purportedly showing him using "Mastermind" for performances at various venues, the advertisements did not include the years of the performances. Pl.'s Ex. D. However, assuming they are for performances throughout numerous years, this alone is not sufficient to conclude the mark has acquired a secondary meaning. Moreover, while Plaintiff provides a screenshot of some of his songs for sale on the website iTunes as "Mastermind," Plaintiff has failed to create a genuine issue of material fact that the mark has become "distinctive of the applicant's goods" and that buyers automatically associate the "Mastermind" mark with Plaintiff's goods or services, in light of Defendants' overwhelming evidence of the mark's use by other individuals and entities. Pl.'s Ex. L; Defs.' Exs. F, G, H, I; Filipino Yellow Pages, 198 F.3d at 1147; Self–Realization Fellowship, 59 F.3d at 911–12.

For the reasons set forth above, Plaintiff does not have a protectable trademark in

the "Mastermind" mark because it is descriptive and has not acquired secondary meaning. Summary judgment is granted in favor of Defendants as to its counterclaim.

The Court notes that Defendants also argued the trademark should be cancelled for several other reasons including: 1) Plaintiff used the mark as a signature and not a source identifier, Mot. 5:11–16, 2) Plaintiff failed to use the mark in commerce in connection with all of the goods listed in Class 009, id. at 9:15–17, 3) Plaintiff committed fraud upon the USPTO in obtaining the trademark, id. at 11:4–6, and 4) Plaintiff abandoned the mark. Mot. 12:6–9. As the Court has determined the mark should be cancelled because it is a descriptive term and it has not acquired secondary meaning, the Court declines to go through the unnecessary analysis of the additional arguments Defendants assert to support cancellation of the trademark.

3. There is no Genuine Issue of Material Fact as to Plaintiff's Federal Dilution Claim and Summary Judgment Should be Granted in Favor of Defendants as to this Claim

 Defendants also request summary judgment as to Plaintiff's federal dilution claim because Plaintiff's use of "Mastermind" is not famous. Mot. 14:1–4. To be successful on a claim for dilution, a party must show "that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment."[1] Jada Toys, Inc. v. Mattel, Inc., 518

---

**1.** A mark is famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Courts may consider the fol-

lowing factors in determining if a mark is sufficiently recognizable including: "(i) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third

F.3d 628, 634 (9th Cir. 2007); 15 U.S.C. § 1125(c)(1). The finding of a mark as famous is "a rigorous standard, as it extends protection only to highly distinctive marks that are well-known throughout the country." Green v. Fornario, 486 F.3d 100, 105 (3d Cir. 2007).

Plaintiff's "Mastermind" mark is not famous because as the Court discussed above, it is merely descriptive without secondary meaning. Plaintiff has failed to show that "Mastermind" is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services" of the mark Plaintiff owns. 15 U.S.C. § 1125(c)(1). While Plaintiff alleges he has used the mark for nearly eighteen years, Plaintiff fails to show the extent and geographic reach of advertising and publicity of the mark. See Jada Toys, Inc., 518 F.3d at 635 (holding that 350 million dollars expended in advertising the mark, three billion units bearing the mark having been sold, and the units bearing the mark having been sold in all fifty states and throughout the work supported a finding that HOT WHEELS was famous). Additionally, Plaintiff provided the Court with no evidence of the amount, volume, and geographic extent of the total sales of his goods under the "Mastermind" mark. In his declaration and disputed material facts, Plaintiff states that as early as 1999, he sold pre-recorded CD's and his audio recordings were available for purchase as early as 2006 via SNOCAP download, which is a digital rights company and downloading software. Opp'n 5:10–16. However, Plaintiff provides absolutely no documentation to support those contentions that creates a genuine issue of fact that the mark is famous.

Moreover, there is no evidence of actual recognition of the mark, as Plaintiff failed to even address Defendants' request for summary judgment as to Plaintiff's dilution claim.[2] Such things as surveys or

---

parties; (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) the extent of actual recognition of the mark; (iv) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or the principal register." Id. at § 1125(c)(2)(A). Dilution by blurring is an "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." Id. at § 1125(c)(2)(B). Courts may consider the following factors to determine if a mark is likely to cause dilution by blurring: (i) the degree of similarity between the mark or trade name and the famous mark; (ii) the degree of inherent or acquired distinctiveness of the famous mark; (iii) the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (iv) the degree of recognition of the famous mark; (v) whether the user of the mark or trade name intended to create an association with the famous mark; (vi) any actual association between the mark or trade name and the famous mark." Id. Dilution by tarnishment is an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." Id. at § 1125(c)(2)(C).

2. Defendants request sanctions against Plaintiff for Plaintiff's failure to meet and confer in good faith pursuant to Local Rule 7–3 as to Plaintiff's federal dilution claim because Plaintiff did not reconsider its position in dismissing this claim after Defendants advised Plaintiff of the lack of merit of the claim and Plaintiff did not even mention the claim in its Opposition. Reply 2:5–22. While the Court encourages parties to attempt resolution of disputes during the meet and confer process, the fact that Plaintiff did not dismiss this claim after what Defendants believe was compelling evidence of a lack of merit of the claim or Plaintiff's failure to address the claim in its Opposition is not grounds for sanctions. The Court will not assume why Plaintiff failed to dismiss the claim after conferring with Defendants or why Plaintiff failed to specifically address the federal dilution claim in its Opposition. The Court denies Defendants request for sanctions against Plaintiff.

expert opinion, or the lack thereof, weigh heavily in finding whether there is actual recognition of a mark and that it is famous. Network Automation, Inc. v. Hewlett–Packard Co., No. CV 08–4675–JFW–RZX, 2009 WL 5908719 at *10–11 (C.D. Cal. Sept. 14, 2009); see Visa International Service Association v. JSL Corp., 590 F.Supp.2d 1306, 1315 (D. Nev. 2008) (holding "that a survey by plaintiff's expert demonstrating that 99 percent of respondents were aware of the VISA brand weighed heavily in favor of a finding of fame.")

The Ninth Circuit has held that "[d]ilution is a cause of action invented and reserved for a select class of marks-those marks with such powerful consumer association that even non-competing uses can impinge on their value." Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 875 (9th Cir. 1999). Courts have held that for a mark to be famous, it must be "truly prominent and renowned." Id. at 875; (quoting I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 46 (1st Cir. 1998)).

While Plaintiff has had a lengthy professional career in the hip-hop industry, there is no evidence that the "Mastermind" mark is so "widely recognized by the general consuming public of the United States" as it relates to identifying Plaintiff and his goods and services. 15 U.S.C. § 1125(c)(2)(A). At the very least, Plaintiff has failed to provide any supported factual disputes that would call this conclusion into question.

As the mark is not famous, there is no issue of fact as to whether Defendants' use began after the mark became famous. Since Plaintiff failed to provide the Court with any genuine issue of material fact as to whether the "Mastermind" mark is famous, the Court need not analyze whether Defendants are making use of the mark in commerce or whether Defendants' use of the mark is likely to cause dilution by blurring or dilution by tarnishment. As such, summary judgment is granted in favor of Defendants on Plaintiff's federal dilution claim.

### 4. There May be a Genuine Issue of Material Fact as to Defendants' Fair Use Defense

Defendants also request summary judgment as to Plaintiff's claims because its use of "Mastermind" is subject to the fair use defense. Mot. 17:13. Plaintiff counters this argument in citing a Third Circuit case and states that fair use is not a defense for a registered trademark, only for copyright infringement. Opp'n 18:24–19:4. Defendants are correct that Plaintiff has misread the holding of Century 21 Real Estate Corp. v. Lendingtree, Inc., 425 F.3d 211, 233 (3d Cir. 2005). It was in the dissent that Judge Fisher articulated his opinion that nominative fair use is not a valid affirmative defense to trademark infringement.

 Fair use is a valid affirmative defense to trademark infringement. Bauer Bros., LLC v. Nike, Inc., 159 F.Supp.3d 1202, 1212–13 (S.D. Cal. 2016). There are two types of fair use that can be asserted as an affirmative defense, classic and nominative. 15 U.S.C. § 1115(b); Cairns v. Franklin Mint Co., 292 F.3d 1139, 1150 (9th Cir. 2002). Classic fair use is employed when a defendant has used a plaintiff's mark to describe his own product while nominative fair use is employed when a defendant has used a plaintiff's mark to describe the plaintiff's product. Cairns, 292 F.3d at 1150. Classic fair use involves a defendant's use of a descriptive term in its "primary, descriptive sense." Id. at 1151; Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc., 618 F.3d 1025, 1031 (9th Cir. 2010). The purpose of the fair use defense is to

prevent any one individual from obtaining a monopoly of a descriptive term simply by trademarking it first. Fortune Dynamic, 618 F.3d at 1039. Here, Defendants are asserting a classic fair use defense to trademark infringement. Reply 4:12–14.

To successfully assert a classic fair use defense a defendant must show: "1) [d]efendant's use of the term is not as a trademark or service mark; 2) [d]efendant uses the term 'fairly and in good faith;' and 3) [d]efendant uses the term 'only to describe its goods or services.' " Cairns, 292 F.3d at 1151; 15 U.S.C. § 1115(b)). Classic fair use is not available as a defense if there is a likelihood of confusion as to the origin of the product.[3] Bauer Bros., 159 F.Supp.3d at 1212–13.

Defendants fail to go through each factor relevant in determining whether its use of "Mastermind" is entitled to the fair use defense. The only argument Defendants raise to assert this defense is that "Mastermind" has been so widely used as a descriptive term and Defendants did not intend that consumers recognize its works by that identifier. Mot. 17:21–28. Plaintiff fares no better in showing there is a genuine issue of material fact as to this defense

because its contention is that fair use is not even a valid defense to trademark infringement (which it is) and that "Mastermind" is not merely a descriptive term. Opp'n 18:24–19:12. As summary judgment is granted as to the cancellation of the trademark and Plaintiff's federal dilution claim, the Court declines to parse through the parties' lackluster arguments to go through an unnecessary analysis. Summary judgment as to Defendants' fair use defense is denied.

Defendants also raise an argument as to the limitations on Plaintiff's damages for any alleged infringement because of Plaintiff's failure to provide actual notice by failing to use the ® symbol pursuant to 15 U.S.C. § 1111. Mot. 18:5–22. For the same reasons stated above, this analysis is moot and the Court declines to address this argument.

Each of Plaintiff's claims is dependent on its ownership of a protectable trademark and Defendants' alleged infringement of the trademark "Mastermind."[4] Because the Court concludes that "Mastermind" is descriptive and has not acquired secondary meaning thereby not entitling the mark to trademark protection and the

---

3. Courts have used the factors utilized in determining whether there is a likelihood of confusion in determining trademark infringement from AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir. 1979) abrogated on other grounds by Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792 (9th Cir. 2003) in determining if there is a likelihood of confusion when a fair use defense is asserted. Those factors include: 1) the strength of the mark; 2) proximity of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) type of goods and the degree of care likely to be exercised by the purchaser; 7) defendant's intent in selecting the mark; and 8) the likelihood of expansion of the product lines.

4. Solid 21, 109 F.Supp.3d at 1322; see 15 U.S.C. § 1114(1); Lahoti, 586 F.3d at 1197 ("to state a claim under 15 U.S.C. § 1114(1),

plaintiff must prove ownership of a valid mark"); 15 U.S.C. § 1125(a); Int'l Order of Job's Daughters v. Lindeburg & Co., 633 F.2d 912, 917 (9th Cir. 1980) ("test for claims under 15 U.S.C. §§ 1114 and 1125(a) are the same"); Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1153 (9th Cir. 2002)("dismissing claims under California's [Unfair Competition Law] as 'substantially congruent' to claims under the Lanham Act")(internal quotation marks and citations omitted); Glow Indus., Inc. v. Lopez, 252 F.Supp.2d 962, 975 n.90 (C.D. Cal. 2002)("standard under Lanham Act for trademark infringement and unfair competition is the same, and actions under California's [Unfair Competition Law] for state claims ... for unfair competition are 'substantially similar to' comparable federal claims.")

Court's granting of summary judgment as to Plaintiff's Federal Dilution Claim, summary judgment as to Plaintiff's remaining claims of unfair competition, unjust enrichment, and misappropriation is also granted.[5]

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendants' Request for Judicial Notice and the Court **GRANTS** Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

---

**5.** In Toho Co., Ltd. v. Sears, Roebuck & Co., 645 F.2d 788, 794 (9th Cir. 1981), the Ninth Circuit stated that Plaintiff failed to cite to any cases extending a misappropriation theory to trademark infringement and that California courts would also not extend such theory to a claim for trademark infringement. Bell v. Harley Davidson Motor Co., 539 F.Supp.2d 1249, 1256 (S.D. Cal. 2008) ("Black–letter law holds that California's common-law doctrine of misappropriation does not extend to trademark infringement claims.") Courts have also held that unjust enrichment is not a separate cause of action but a form of relief. Klein Electronics, Inc. v. Boxwave Corp., No. 10–CV–2197–WQH–(POR), 2011 WL 2560238, at *5 (S.D. Cal. June 27, 2011)(citing Johns v. Bayer Corp., No. 09–cv–1935–DMS, 2010 WL 476688, at *6 n.3 (S.D. Cal. Feb. 9, 2010)) ("While a split of authority appears to exist on this issue, this Court agrees with those courts that conclude unjust enrichment is not a separate claim."); McBride v. Boughton, 123 Cal.App.4th 379, 387, 20 Cal.Rptr.3d 115 (2004) ("Unjust enrichment is not a cause of action ... or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution.") (internal citations omitted); see also McKell v. Wash. Mut., Inc., 142 Cal.App.4th 1457, 1490, 49 Cal.Rptr.3d 227 (2006) ("There is no cause of action for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust.") (citation omitted)